FILED

**June 3, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.C.**

**No. 20-0953** (Fayette County 19-JA-188)

## MEMORANDUM DECISION

Petitioner Mother A.R., by counsel Nancy S. Fraley, appeals the Circuit Court of Fayette County's November 2, 2020, order terminating her parental rights to D.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Vickie L. Hylton, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in December of 2019. The DHHR alleged that petitioner previously lost primary custody of her child during family court proceedings in Wyoming County, West Virginia, but was granted three weekends per month with the child. The DHHR received a referral indicating that petitioner was abusing drugs, including while parenting the child on her weekends with him, and that the child had allegedly found needles in petitioner's purse. A Child Protective Services ("CPS") worker spoke to the then-ten-year-old child, who reported that he had previously observed petitioner snorting methamphetamine with a straw and that he watched her and her boyfriend use "a credit card with powder and a straw." The child confirmed that he found needles in his mother's possession and informed the worker that he could tell when petitioner was using drugs because she "makes no sense." The child also reported

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

seeing petitioner engage in domestic violence. The child stated that he did not feel safe and feared that "the cops will come and something bad will happen." The DHHR additionally alleged that petitioner had inappropriate housing that lacked power, heat, or water, and that the child had to eat at a neighbor's house when he stayed with petitioner. In sum, the DHHR alleged that petitioner had a substance abuse problem that impaired her ability to properly care for the child.

Initially, the DHHR was unable to locate petitioner, and the circuit court permitted the DHHR to publish notification for the preliminary hearing by newspaper. It was later discovered that petitioner had been incarcerated. Petitioner presented in person to a scheduled adjudicatory hearing in February of 2020, having been transported from her place of incarceration, and she requested a continuance in order to participate in a multidisciplinary team ("MDT") meeting. The circuit court noted that petitioner had multiple misdemeanor charges in Wyoming County, West Virginia, and felony charges in McDowell County, West Virginia.[2] The circuit court granted the motion to continue and ordered that petitioner could enjoy visits with the child contingent upon her submission of two clean drug screens. Petitioner was subsequently released from incarceration. Thereafter, a series of continuances occurred due to various counsel's requests and the COVID-19 pandemic. The adjudicatory hearing was eventually held in June of 2020. Petitioner failed to attend but was represented by counsel. The circuit court adjudicated petitioner as an abusing parent based upon her substance abuse and exposing the child to domestic violence.

A dispositional hearing was held in August of 2020. The circuit court was advised that the DHHR had not yet filed the family case plan, and so the proceedings were continued. The circuit court ordered services to begin and again informed petitioner that she could visit with the child following two clean drug screens. Petitioner filed a motion for a post-adjudicatory improvement period and, immediately following the hearing, tested positive for marijuana. After two more continuances, the circuit court held a dispositional hearing in October of 2020.

The guardian filed a report indicating that petitioner "has done nothing to participate in this case." The guardian noted that petitioner was given time to address her drug abuse, but she failed to do so. According to the guardian, the child desired that petitioner's parental rights be terminated.

A CPS worker testified that petitioner failed to maintain consistent contact with her throughout the proceedings. Specifically, the CPS worker received only two e-mails from petitioner concerning drug screening after petitioner moved to the State of Virginia at some point during the proceedings. The worker testified that she responded to the e-mails in a timely manner and received no further communication from petitioner. The CPS worker testified that she was never able to put services in place due to petitioner's inability or refusal to contact the DHHR. Based upon petitioner's lack of participation, the worker recommended the termination of petitioner's parental rights.

Petitioner presented the testimony of her boyfriend, J.B., who testified that he and petitioner moved to Virginia during the proceedings to "escape negative influences." J.B. testified that he and petitioner frequently smoked marijuana in Virginia because it is decriminalized in that

---

[2]According to a later-submitted guardian's report, these charges included driving under the influence, leaving the scene with property damage, and two counts of "simple possession."

State.[3] He also testified that they had smoked the substance as recently as the day prior to the hearing.

Petitioner testified that she attempted to contact the DHHR on multiple occasions. Petitioner denied abusing any substance other than marijuana and claimed that she stopped smoking marijuana in August of 2020, contrary to J.B.'s testimony. Petitioner denied having a substance abuse issue and claimed that she was only adjudicated as an abusing parent "because she was unable to travel to court." Petitioner further denied that the child ever observed her abusing methamphetamine. Despite denying that she had a substance abuse issue, petitioner testified that she would enter a long-term inpatient drug rehabilitation program in order to regain custody of the child. Petitioner also acknowledged ongoing criminal proceedings and that the charges involved multiple controlled substances, including methamphetamine, but denied any responsibility and maintained her innocence. Petitioner admitted to using controlled substances while on bond for these charges. Petitioner conceded that she had not sought drug treatment, submitted to drug screens, visited with the child, or completed any type of services during the proceedings.

By order entered on November 2, 2020, the circuit court found that petitioner failed to meaningfully participate in the proceedings and that this failure was a consequence of "her choice to escape to Virginia and avoid addressing the substance abuse issues." The circuit court found that petitioner's testimony demonstrated that she minimized the impact her substance abuse had on her child and that she denied abusing any controlled substances, despite admitting to recent marijuana use. In fact, by her own admission and that of her witness, petitioner continued to use controlled substances. The circuit court further found that petitioner failed the only drug screen she submitted during the pendency of the case. The circuit court found that "[c]onsidering what was at stake," petitioner "did very little to arrange visitation and only made a few documented efforts to reach" the CPS worker during the months of August of 2020 and September of 2020, which was after she filed her motion for an improvement period. The circuit court found that petitioner's substance abuse remained an unresolved issue. The circuit court also considered the child's desires that petitioner's parental rights be terminated so that he could eventually be adopted by his potential stepmother. Accordingly, the circuit court terminated petitioner's parental rights based upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the November 2, 2020, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

---

[3]Effective July 1, 2020, the State of Virginia decriminalized simple possession of marijuana.

[4]The father was deemed a nonabusing parent during the proceedings below, and the permanency plan for the child is to remain in his care.

3

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her an improvement period. Petitioner questions how she could have met her burden of demonstrating that she was entitled to an improvement period when "no services or means to comply" were put in place. Petitioner argues that the CPS worker never had a "sit down conversation" with her and that the "only time she was told to drug screen she did so." Petitioner contends that granting her an improvement period would not have caused a delay in the child's permanency as he was in the custody of his father. Although not clear, petitioner also seems to argue that she was prejudiced by continuances in the matter. According to petitioner, the time frames set forth in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings encourage "[a]dult [r]espondents to ma[k]e meaningful changes quickly" and that due to the delays, along with the constraints of the COVID-19 pandemic, she "did not benefit from any of the time frames so carefully put in place."

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner contends that she was unable to meet her burden of demonstrating that she was likely to participate when there were no services to comply with, the record demonstrates that the CPS worker attempted to contact petitioner on multiple occasions but that petitioner refused to respond. In fact, petitioner failed to maintain contact with either the DHHR or her attorney and failed to participate in multiple hearings and MDT meetings throughout the proceedings. Petitioner moved to Virginia where the DHHR's services were unavailable. Further, despite having been advised on multiple occasions that she could visit with the child after submitting two negative screens, petitioner submitted only one screen during the entirety of the case and tested positive for marijuana on that occasion. This Court has previously held that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996). Further,

4

petitioner admittedly abused marijuana throughout the proceedings. While simple possession of marijuana has been decriminalized in Virginia since July 1, 2020, abusing marijuana was a violation of her bond in West Virginia and in direct violation of the circuit court's directives. Lastly, we find no merit to petitioner's argument that she was somehow prejudiced by any delays in the proceedings. Petitioner's counsel requested some of the continuances, and petitioner was provided additional time to address the conditions of abuse and neglect but failed to do so. Accordingly, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights. According to petitioner, termination of her parental rights did nothing to protect the child or assure permanency for him when the child remained in the care of his father. Petitioner also argues that the circumstances of her case did not require termination under West Virginia Code § 49-4-605(a).[5] Petitioner argues that she made strides to correct her substance abuse and domestic

---

[5]West Virginia Code § 49-4-605(a) provides as follows:

(a) Except as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home;

(2) If a court has determined the child is abandoned, tortured, sexually abused, or chronically abused;

(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children, another child in the household, or the other parent of his or her children; has attempted or conspired to commit murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children, another child in the household or to the other parent of his or her children; has committed sexual assault or sexual abuse of the child, the child's other parent, guardian or custodian, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent; or the parental rights of the parent to another child have been terminated involuntarily; or

(4) If a parent whose child has been removed from the parent's care, custody, and control by an order of removal voluntarily fails to have contact or attempt to have contact with the child for a period of 18 consecutive months: Provided, That failure to have, or attempt to have, contact due to being incarcerated, being in a medical or

5

violence issues. Petitioner relocated to Virginia and tested positive for marijuana only, which she claims was a "significant improvement." Further, there was no evidence that she engaged in domestic violence after moving to Virginia. Petitioner claims that her move to Virginia should not have been treated as an "insurmountable, negative decision on her part," especially given that services were being provided virtually due to the COVID-19 pandemic. Petitioner demonstrated that her circumstances had changed, and this was not a case where there was no reasonable likelihood that she could correct the conditions of abuse and neglect. Petitioner avers that, with services, she could have made additional improvements. Lastly, petitioner argues that the circuit court erred in considering the child's desire that her parental rights be terminated so that he could potentially be adopted by his father's fiancée upon their marriage.

While the DHHR was not required to seek termination under West Virginia Code §49-4-605(a) given the facts of this case, we note that West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence set forth above likewise supports the circuit court's decision to terminate petitioner's parental rights. Here, petitioner absented herself from the majority of the proceedings and failed to maintain contact with her attorney or the DHHR such that services could be implemented. While petitioner claims that she improved her situation by moving to Virginia and testing positive for only marijuana, we note that petitioner completed no services designed to treat the conditions of abuse and neglect alleged in the petition and that her abuse of marijuana remained a violation of the terms of her bond in West Virginia and the circuit court's directive, irrespective of its legal status in Virginia. Moreover, petitioner submitted to only one screen during the proceedings. Therefore, it can hardly be said that petitioner's single positive test for marijuana is a "significant improvement." Indeed, as of the dispositional hearing, petitioner denied that she had a substance abuse problem and claimed that she had only been adjudicated due to her failure to appear at the adjudicatory hearing. "Failure to acknowledge the existence of the problem . . . results in making the problem untreatable . . . ." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citing *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based on the foregoing, it is clear that petitioner was unable to solve the problems of abuse or neglect on her own or with the help of the DHHR and, thus, termination of her parental rights was not error.

To the extent petitioner argues that the circuit court should not have terminated her parental rights because the father maintained custody of the child, we find no error. We have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the non-abusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically

---

drug treatment or recovery facility, or being on active military duty shall not be considered voluntary behavior.

entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* As demonstrated above, petitioner failed to remedy the conditions of abuse and neglect. Therefore, termination of her parental rights was warranted despite the fact that the nonabusing father's parental rights remain intact.

Lastly, we find no error in the circuit court's consideration of the then-eleven-year-old child's desires at disposition. According to West Virginia Code § 49-4-604(c)(6)(C), in terminating a parent's parental rights, "the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." This statute simply requires that a court consider a child's wishes when he or she is of appropriate maturity, which the circuit court here did. There is no indication that the child was not of sufficient maturity to express a preference on the matter, that the circuit court improperly weighed the child's preference, or that the circuit court placed undue consideration on a potential adoption by the father's fiancée. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 2, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton